***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and rehear the parties or their representatives. The Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. Defendant-employer was self-insured on the date of injury.
5. Plaintiff sustained a compensable injury by accident on June 19, 2007.
6. An employment relationship existed between plaintiff and defendant-employer on June 19, 2007.
7. Plaintiff's average weekly wage was $397.06, yielding a compensation rate of $264.72 per week.
8. Plaintiff has been paid three weeks of temporary total disability benefits.
9. The issues before the Commission are whether the compensable injury of June 19, 2007 caused or materially aggravated plaintiff's back and knee conditions and, if so, to what benefits is plaintiff entitled.
 *********** EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: Industrial Commission forms and medical records
 b. Stipulated Exhibit #2: medical billing and records *Page 3 
2. In addition to the Stipulated Exhibit(s), Defendants' Exhibit #1, leave request, was received into evidence.
 ***********
Based upon the foregoing stipulations and evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 51 years old. She began her employment with defendant-employer in 2001. Plaintiff was employed in the grocery department performing overnight stocking duties.
2. On June 19, 2007, plaintiff was unloading a pallet in the grocery department when she stepped between some missing boards on the pallet, twisted her back and fell to the floor, landing on her knees. Plaintiff immediately reported the incident to her supervisor, James Thomas.
3. Plaintiff went to the emergency room of Harris Regional on June 20, 2007 with left knee and low back pain. X-rays were taken and she received pain medication. Plaintiff was written out of work at that time until June 25, 2007.
4. Defendant filed a Form 60 on July 5, 2007, accepting plaintiff's contusion of the left knee and lumbar sprain. On March 31, 2009 defendant filed a Form 61 denying plaintiff's back and left knee conditions.
5. On July 11, 2007, plaintiff presented to Dr. Michael Goebel of Blue Ridge Bone Joint Clinic. Dr. Goebel reviewed the x-rays of the lumbar spine and opined that they showed a congenital abnormality of the spine. X-rays of the left knee showed some moderate, if not severe, arthritis. Plaintiff's physical examination showed no evidence of bruising, swelling or *Page 4 
other abnormalities, and no evidence of fluid within the knee. A neurologic examination of the lower extremity showed plaintiff to have five-over-five strength throughout, which Dr. Goebel opined constituted a normal exam. Plaintiff also had a normal range of motion and normal neurological examination. Dr. Goebel diagnosed plaintiff with a thoracic strain and left knee strain, as well as thoracic spondylosis and left knee arthritis. Dr. Goebel examined plaintiff but did no diagnostic testing. Dr. Goebel recommended physical therapy and light duty work restrictions with no lifting over 15 pounds.
6. Plaintiff returned to light duty work for defendant-employer on July 14, 2007. Plaintiff experienced increasing pain and difficulty walking, with shooting pain down her left leg.
7. Plaintiff returned to Dr. Goebel for her second visit on August 9, 2007, and Dr. Goebel noted that her pain had improved. She was no longer taking any pain medication and had participated in physical therapy as recommended. Dr. Goebel opined that plaintiff had "[p]retty much a normal exam again" with good range of motion in the left knee, no signs of joint effusion, normal gait, and forward flexion to 90 degrees. He further opined that, as with the initial evaluation, there were no findings of any acute injury in the knee. Dr. Goebel diagnosed plaintiff with a resolving arthritis flare of the back and the left knee.
8. On September 5, 2007, plaintiff presented to Dr. Goebel for her third and final visit with him and reported thoracolumbar pain. Dr. Goebel noted that plaintiff was no longer having knee pain and did not complain of lumbar pain. On physical examination, plaintiff had a normal exam. Dr. Goebel opined that plaintiff had experienced a flare-up of her arthritis in both her back and knee, but that the flare-up had resolved to her baseline level. Dr. Goebel noted that he had nothing to recommend that would substantially improve plaintiff's condition and that *Page 5 
plaintiff would always have some knee and back pain due to the amount of pre-existing arthritis. Dr. Goebel released plaintiff to return to full duty work and assigned a 0% permanent partial disability rating.
9. After plaintiff returned to full-duty work, she was unable to perform her job as well as she had prior to the fall due to knee and back pain. She contacted the insurance adjuster seeking additional medical treatment, but was told that her case was closed and no further treatment was authorized. Dr. Goebel told plaintiff that she had to learn to live with the arthritis and he offered no further treatment options when he released her from his care.
10. At his deposition Dr. Goebel stated that disc bulging is part of the natural aging of the spine, and that plaintiff would probably have a disc bulge at every level of her thoracic spine, given the amount of arthritis located in that area. He further opined that he did not know if plaintiff's disc bulge was acute versus something caused by arthritis; however, he stated to a reasonable degree of medical certainty, there is "absolutely no relationship" between plaintiff's work-related injury and the subsequently diagnosed disc bulge. Dr. Goebel explained that after an acute injury, a bulging disc with nerve root irritation would be present within a day or two of the date of injury. Dr. Goebel opined that if plaintiff had a herniated disc as a result of the June 19, 2007 work-related injury, she would have presented with sciatica at the time he treated her. Plaintiff did not present with any radiculopathy or symptoms of radiating pain into the lower extremity or foot.
11. Regarding plaintiff's knee condition, Dr. Goebel was not surprised that plaintiff had degenerative tears within the meniscus because she had severe arthritis of the knee, noting that her condition is part of the degenerative process. Dr. Goebel noted that if someone has an acute meniscal tear, one will almost always see associated swelling of the knee itself, which *Page 6 
plaintiff did not have. Dr. Goebel opined to a reasonable degree of medical certainty that there was no evidence of any significant joint effusion that would indicate any new or acute meniscal tears within the knee, and that there was no doubt that plaintiff already had severe arthritis in the left knee similar to what she had in the right knee. Further, while the injury seemed to aggravate plaintiff's arthritis, this seemed to be resolved by the last time he saw her.
12. Plaintiff did not seek medical attention for conditions related to the compensable incident of June 19, 2007 for the next seven months, due to defendant's denial of treatment authorization. Plaintiff relied on Dr. Goebel's statements that she had to try to live with the pain. Also plaintiff's family doctor had relocated and she had to find a new physician, which caused some delay in treatment. Plaintiff experienced ongoing pain during the seven months she did not seek treatment. When she got off work every morning, plaintiff was often in tears and could hardly walk. Her coworkers helped her perform her job duties. Plaintiff was on her feet the whole shift while she stocked shelves. Plaintiff experienced pain, clicking and locking into place in her left knee and shooting pain down her legs.
13. On April 23, 2008, plaintiff presented to a new primary care physician, Dr. Ofelia Balta, with foot and ankle swelling. She stated that her discomfort was severe at times, and mostly in the left ankle. Plaintiff was diagnosed with hypertension and diffuse degenerative arthritis.
14. Plaintiff returned to Dr. Balta on May 22, 2008, with complaints of low back pain, foot pain bilaterally, and left knee pain. Dr. Balta ordered an MRI of the lumbar spine and left knee. Dr. Balta also prescribed physical therapy, Lyrica, and Lidoderm patches.
15. After reviewing the MRI, on June 20, 2008, Dr. Balta diagnosed plaintiff with a herniated lumbar disc, low back pain, foot pain, sciatica, degenerative arthritis of the knee, and *Page 7 
depression. She removed plaintiff from work for two weeks and referred plaintiff to neurosurgeon Dr. Jeffery Albea for her spinal condition and Dr. Martin Senicki, an orthopedist, for her knee condition.
16. Plaintiff presented to Dr. Senicki on July 2, 2008, with mild to moderate joint effusion, at which time Dr. Senicki wrote plaintiff out of work until further notice. Dr. Senicki opined that plaintiff's physical findings, along with the MRI, led him to a diagnosis of medial meniscus tear. He performed arthroscopy surgery on plaintiff's left knee on July 24, 2008. His postoperative diagnoses were complex tear of the posterior horn of the medial meniscus, complex tear of the anterior horn of the lateral meniscus, and tricompartmental Grade 3 to 4 chondromalacia, which is a grading scale of the damage to the articular cartilage on the end of the bone.
17. Dr. Senicki explained that arthritis is the loss of articular cartilage, and that plaintiff had a fairly significant amount of arthritis in the knee. Dr. Senicki noted that the tear of the posterior horn of the medial meniscus was subacute, meaning it had been injured at some point in the past. Dr. Senicki could not approximate when the injury causing an acute tear would have occurred, without a prior MRI to compare. Dr. Senicki stated that the medial meniscus had an appearance of something that occurred in one quick event. He further stated that the medial meniscal tear was causally related to the compensable fall, but that he could not say for sure whether the tear of the posterior lateral meniscus was subacute or due to arthritis.
18. It was Dr. Senicki's opinion, and the Full Commission finds, that the medial meniscal tear to a reasonable degree of medical certainty is related to the June 19, 2007 incident, based on Dr. Senicki's findings in arthroscopy, along with plaintiff's history, including the fact that there was a traumatic event and that plaintiff had complained of knee pain since the *Page 8 
accident. Dr. Senicki also believed and the Commission finds that plaintiff's fall of June 19, 2007 aggravated her pre-existing arthritis. Dr. Senicki stated that the fact that plaintiff had persistent pain and recurrent episodes of pain off and on was more significant in forming his causation opinion than the fact that plaintiff presented without swelling of the knee on several visits to Dr. Goebel.
19. Dr. Senicki released plaintiff to return to work as of October 15, 2008 with a 5% permanent partial impairment rating of the left knee. He believes that plaintiff may need a total knee replacement in the future, but that the knee replacement would be related to the pre-existing arthritis and not to the June 19, 2007 work-related injury by accident.
20. Plaintiff returned to work on October 15, 2008, and continued to work until taken out of work for back surgery on February 5, 2009. In order to perform her job duties, plaintiff rode an electric cart to the time clock and to the aisle where she worked, and had to sit down every five to ten minutes. Her left knee pain continued, causing her difficulty walking. Defendant-employer accommodated plaintiff's work restrictions.
21. In regard to plaintiff's back condition, on July 21, 2008, plaintiff presented to Dr. Albea with left arm pain and low back pain radiating into her left leg down the middle of the leg to her toes, as well as numbness, tingling, and electrical sensation in the same distribution. Dr. Albea noted that the MRI performed in June 2008 revealed a small central disc bulge at L5-S1 near the traversing S1 nerve roots and degenerative disc disease. Dr. Albea recommended physical therapy which plaintiff continued for four weeks with no improvement.
22. Plaintiff continued to treat with Dr. Albea, who provided nerve block injections and prescribed a TENS unit. Plaintiff reported the first two S1 nerve root blocks did help with pain. Plaintiff then reported worsening pain in her back and legs at the December 5, 2008 visit. *Page 9 
Dr. Albea kept plaintiff on light duty work and because conservative treatment had failed, he and plaintiff discussed surgery.
23. Following a repeat MRI in January 2009, which showed no changes, on February 10, 2009, Dr. Albea performed an L5-S1 hemilaminectomy with removal of the facet joint. Thereafter, plaintiff reported improvement in her leg pain but no change in her back pain. Dr. Albea indicated that the surgery was to address the post injury nerve root irritation. Dr. Albea further stated and the Commission finds that the condition for which he treated plaintiff was caused by the injury or the injury set off the irritation to that S1 nerve root, which lead to the hemilaminectomy.
24. As of the date of the hearing before the Deputy Commissioner, plaintiff remained out of work pursuant to Dr. Balta's orders and had not been released to return to work by Dr. Albea. Subsequently, plaintiff was released to return to light duty work on July 27, 2009, the date of Dr. Albea's deposition, but she had not yet reached maximum medical improvement of her back. Plaintiff has not had the opportunity to present evidence of any continuing disability, as plaintiff was not released to return to work until after the Deputy Commissioner's hearing.
25. On June 19, 2007, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. As a result, she suffered injuries to her left knee and back that temporarily disabled her from work, resulted in permanent impairment and required medical treatment beginning with the date of injury.
26. The Full Commission gives greater weight to the expert opinions of Drs. Senicka and Albea than to those of Dr. Goebel. The greater weight of the medical evidence shows that plaintiff's subsequent back and left knee conditions, for which she began treatment in April 2008, are causally related to the compensable June 19, 2007 injury by accident. *Page 10 
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on June 19, 2007. N.C. Gen. Stat. § 97-2(6).
2. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury." Pittman v. Thomas Howard,122 N.C. App. 124, 130, 468 S.E.2d 283, 286, disc. reviewdenied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident.Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendant to prove that the medical treatment is not directly related to the compensable injury. Id.
3. In the case at bar, on July 5, 2007, defendant filed a Form 60 and accepted plaintiff's left knee and back injury. As such, theParsons presumption applies and defendant failed to rebut the presumption that the medical treatment is directly related to the compensable injury. Perez v. American Airlines/AMR Corp.,174 N.C. App. 128, 620 S.E.2d 288 (2005),disc. rev. improvidently allowed,360 N.C. 587, 634 S.E.2d 887 (2006); Parsons v. Pantry, Inc.,supra. Plaintiff's back and left knee conditions for which she began treatment in April 2008 are causally *Page 11 
related to the compensable injury by accident on June 19, 2007.Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.2d 912 (2000)
4. Plaintiff's left medial meniscus tear was causally related to the June 19, 2007 injury by accident, resulting in plaintiff being temporarily totally disabled from any employment and subsequent knee surgery. Plaintiff is entitled to payment by defendant of temporary total disability compensation at the weekly rate of $264.72 for the periods of June 19, 2007 to September 5, 2007 and July 2, 2008 to October 15, 2008. Plaintiff's June 19, 2007 injury by accident additionally caused plaintiff's back injury, which resulted in ongoing treatment and plaintiff being temporarily totally disabled from any employment as a result of back surgery on February 10, 2009 until July 27, 2009, when Dr. Albea released her with light duty restrictions, for which period she is entitled to payment by defendant for temporary total disability compensation at the weekly rate of $264.72. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. The record contains insufficient evidence regarding the extent of plaintiff's continuing disability, if any, after July 27, 2009. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E. 2d 454 (1993)
6. As the result of plaintiff's June 19, 2007 compensable injury by accident and causally related medial meniscus tear, plaintiff sustained a 5% permanent functional impairment to her left knee. N.C. Gen. Stat. § 97-31(15).
7. As a result of plaintiff's June 19, 2007 compensable injury by accident plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred, as a result of her compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's disability, *Page 12 
including expenses associated with plaintiff's left knee and back, subject to the provisions of N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay to plaintiff total temporary total disability compensation at the weekly rate of $264.72 for the periods of June 19, 2007 to September 5, 2007, July 2, 2008 to October 15, 2008 and February 10, 2009 to July 27, 2009. This amount has accrued and shall be paid in a lump sum. Defendant is entitled to a credit for compensation previously paid during this period.
2. Defendant shall pay all related medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident on June 19, 2007, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. A reasonable attorney's fee of 25% of the compensation awarded herein is approved for counsel for plaintiff. Of the accrued amount, defendant shall pay 25% directly to plaintiff's counsel.
4. In that the record contains insufficient evidence concerning the extent of plaintiff's continuing disability, if any, after July 27, 2009, this issue is RESERVED for future determination or agreement of the parties.
5. Defendant shall pay the costs due the Commission.
This the 12th day of May 2010. *Page 13 
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1